IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DANIEL MCRAE | * | |
| LANDON SCRUGGS | | |
|        Plaintiffs, | * | |
| v. | * | CIVIL ACTION NO. RWT-06-569 |
| CORRECTIONAL MEDICAL SERVICES, INC. | * | |
| ABU KALOKOH, RN[1] | * | |
|        Defendants. | | |
| | *** | |

**MEMORANDUM OPINION**

II.    Procedural History

Plaintiffs Daniel McRae and Landon Scruggs ("McRae" and "Scruggs") filed this 42 U.S.C. § 1983 civil rights complaint for damages and injunctive relief based on the treatment they received while housed at the Prince Georges County Detention Center in Upper Marlboro, Maryland ("PGCDC").[2] McRae complains that he suffered wounds prior to his detention and was denied medical care at PGCDC in the form of medical housing, pain medication, and long-term physical therapy ("PT"). Scruggs alleges that he was admitted to PGCDC on October 5, 2005, and placed on administrative segregation because he was "starting to have withdrawals from pain management medication." Scruggs claims that he was informed that Correctional Medical Services, Inc. ("CMS") does not dispense the particular pain medication he was prescribed and the only way he could obtain those medications was to be placed on medical isolation. Scruggs complains that

---

[1] The docket shall be amended to reflect the correct spelling of Defendant Kalokoh's last name.

[2] At the time the Complaint was filed Scruggs had already been released from the PGCDC. McRae was released from the PGCDC on April 4, 2005. Their request for injunctive relief thus has been rendered moot.

assignment to medical isolation at PGCDC effectively results in the taking of recreation and law library privileges and that such a medical isolation policy discriminates against all inmates who require medication and medical attention. (Paper No. 1).

On June 30, 2006, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, which will be treated as a summary judgment motion. (Paper No. 10). McRae filed his Opposition on July 26, 2006. (Paper No. 12). Defendants filed a court-ordered Reply and McRae has filed his Surreply. (Paper Nos. 14, 15). The matter is ready for this Court's consideration. The undersigned concludes that an oral hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2004).

II.   Facts

McRae arrived at PGCDC on November 4, 2005, after an inpatient surgical stay at the Washington Hospital Center for surgery to treat self-inflicted stab wounds to his neck, chest, and both wrists.[3] Upon arrival at PGCDC, McRae was admitted to the medical unit for observation, treatment of wounds, and pain control. He initially received a regimen of antibiotics, was prescribed non-steroidal anti-inflammatory drugs ("NSAIDs"), and had his bandages changed as ordered during his medical unit stay. Dr. Asresahegn examined McRae while he was in the medical unit on November 7, November 10, November 15, and November 17, 2005. McRae complained of a wound on his leg. Dr. Asresahegn examined the site and found that the area appeared indurated. He ordered Bactrim and daily dressing changes to the wound. The staples in McRae's wounds were removed on November 17, 2005. According to medical exhibits and declarations, McRae's wounds

---

[3] McRae disputes that the wounds were self-inflicted.

2

healed without infection and he was transferred out of the medical unit on November 17, 2005.[4]  In Dr. Asresahegn's opinion, McRae did not require narcotic pain medication (Percocet).[5]

Dr. Hussein assumed care over McRae upon his transfer out of the PGCDC medical unit. He examined McRae on November 23, 2005, in response to McRae's complaints about continued pain due to chest trauma.  Hussein noted that McRae's chest and abdominal incisions were healed, but that he still had slight swelling of the right arm.  He renewed the order of NSAIDs for pain.

McRae submitted a sick-call request on January 13, 2006.  He was examined by Dr. Hussein on January 25, 2006, for complaints of limited range of movement ("ROM") of his right wrist and pain on sternal areas.  Hussein reassured McRae about his wrist function and ordered Motrin for pain.[6]  Defendants' exhibits indicate that McRae continued to receive pain medication as needed from November 19, 2005, to December 5, 2005, and from January 25, 2006, to January 30, 2006. Defendants continue to maintain that they had only one record of an sick-call form filed by McRae–the request dated January 13, 2006.  They state that McRae offered no further complaints after January 25, 2006, and was released from PGCDC on April 4, 2006.

Scruggs was detained at PGCDC on October 6, 2005, and was admitted to the medical unit to:  (i) control symptoms of withdrawal from methadone; and (ii) treat his chronic back pain.  He was seen by PGCDC medical personnel, along with the PGCDC psychologist and psychiatrist and

---

[4] Dr. Asresahegn affirms that he did not order physical or occupational therapy for McRae's right hand because McRae had adequate improvement in function and passive range of motion of the hand.  He states that McRae was given instructions for passive and active range of motion exercises.

[5] Defendants note that as McRae has a history of cocaine use, the long-term use of narcotic medications is not appropriate.

[6] Defendant Kalokoh affirms that Hussein did not order PT for McRae's wrist because he believed it was not medically necessary. Dr. Hussein confirms this statement by Reply declaration.

prescribed Trazodone, Zoloft, Motrin, and Clonidine. On November 3, 2005, Scruggs was reclassified to PGCDC Housing Unit B, but as there were no beds available, he was brought back to the medical unit. Scruggs refused to stay in the medical unit and walked out. For the remainder of his detention, Scruggs was housed in either PGCDC Housing Unit 8 or Housing Unit 11-B. He was released on February 18, 2006.

III.     Standard of Review

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6). Such a motion must be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In its determination, the court must consider all well-pled allegations in a complaint as true, see *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff. *See Lambeth v. Bd f Comm'rs of Davidson County*, 407 F.3d 266, 268 (4th Cir. 2005). If, however, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed. R. Civ. P. 12(b).

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "A material fact is one that 'might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To avoid summary judgment, the non-moving party "may not rest upon mere allegations

or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

A prisoner presenting a denial of medical care claim must prove two essential elements.[7] First, he must demonstrate that he has a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, the prisoner must then prove deliberate indifference on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837. Healthcare staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844; *see also Johnson v. Quinones*, 145 F.3d at 167. Mere malpractice or negligence does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106; *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990).

---

[7] The United States Court of Appeals for the Fourth Circuit has held that the Fourteenth Amendment due process rights of detainees are at least coextensive with the Eighth Amendment rights of convicted prisoners. *See Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998); *Whisenant v. Yuam*, 739 F.2d 160, 163 n.4 (4th Cir. 1984); *Loe v. Armistead*, 582 F.2d 1291, 1292 (4th Cir. 1978). Consequently, to the extent that McRae and Scruggs were housed at PGCDC prior to sentencing, their medical claims shall be analyzed under the Eighth Amendment.

III.   Analysis

CMS argues that it cannot be held liable based on the principles of vicarious liability, otherwise known as the doctrine of *respondeat superior*. Defendants further assert, by the submission of the declarations of Nurse Kalokoh, Dr. Meskerem Asresahegn, and Dr. Saisu Hussein and Plaintiffs' medical records, that both McRae and Scruggs received constitutionally adequate medical care.

In response to Defendants' filings, McRae claims that while there was some medication and bandage treatment for a leg injury, the regimen was inconsistent, inadequate, and insufficient considering the injuries he sustained. He maintains that it was rash and unnecessary to discontinue the Percocet pain medication prescribed by the Washington Hospital Center.[8] He further asserts that there were slow responses to his sick-call slips, nurses were unwilling to administer medical treatment, and the medical unit refused to call him for care when he complained of emergency situations. McRae states that: (i) he continually submitted sick-call slips and requested medical attention, but care was either denied or his requests went unanswered; and (ii) he is "still healing," as he has "very little upper body strength, chest pains, and....is still unable to bend my right wrist." McRae acknowledges that he has full use of his left hand and wrist, along with the fingers of his right hand. It is his position, however, that the loss of ROM to the right wrist was caused by Defendants' failure to properly treat him for the post-surgical repair of the damage to his flexor

---

[8]   McRae argues that Defendants' claim that he was not a good candidate for narcotic pain medication due to his drug use history is of questionable merit as co-Plaintiff Scruggs has a drug history and was receiving addictive narcotic medications.

tendons after his release from the PGCDC medical unit in November of 2005, until his release from PGCDC in April of 2006.[9]

To the extent the Complaint attempts to implicate CMS in the alleged denial of medical care solely upon vicarious liability, the law in this circuit is clear. The doctrine of respondeat superior does not apply to § 1983 claims. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982).

The court's inquiry, however, does not end there. The record shows that McRae and Scruggs received constitutionally adequate medical care by CMS personnel while housed at PGCDC. The record presented to this Court shows that he was monitored and treated in the medical unit for the first month of his detention, undergoing bandage changes and receiving NSAIDs as needed for pain. His wounds showed no signs of infection. According to the medical record, from November 24, 2005, until his release from PGCDC, McRae offered no further complaints regarding his injuries, with the exception of a January 13, 2006 complaint of sternal pain and some limited ROM in his right wrist. He was examined by a PGCDC physician, albeit 12 days later. The physician found the wrist surgical site to have healed properly and reassured McRae about the injury. Pain medication in the form of NSAIDs were prescribed. The physicians who examined his wounds were of the opinion that neither physical nor occupational therapies were medically necessary because McRae had shown adequate improvement and movement of the right hand.[10]

---

[9] McRae states that upon his transfer to a Maryland Division of Correction facility on April 4, 2006, he was classified as a chronic care patient and was medically prescribed a lower bunk due to problems with his chest and right wrist. He further asserts that he is restricted in his recreation activities and in how he is secured because of his physical problems.

[10] The two physicians that examined and treated McRae at PGCDC affirm that PT was medically unnecessary due to adequate improvement in function and passive range of motion of McRae's right hand. That McRae continues to argue that the limited ROM of his right wrist was caused by CMS personnel's

7

Scruggs was confined at PGCDC for four months. Upon arrival he was admitted to the medical unit and remained so confined for approximately one month to treat chronic back pain and to control symptoms from methadone withdrawal. He was prescribed medications and seen by prison medical and mental health staff.

The undersigned finds that McRae and Scruggs have failed to show through the record, verified affidavits or witness statements, that Defendants were deliberately indifferent to their medical problems.

IV.     Conclusion

For the aforementioned reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is hereby granted. Judgment is entered in favor of Defendants and against McRae and Scruggs. A separate Order follows.


Date:_ 11/28/06                                            /s/
                                                    ROGER W. TITUS
                                                    UNITED STATES DISTRICT JUDGE

---

failure to provide him PT and care states, at best, a disagreement with medical opinion and a claim of malfeasance.